# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.                                      No. CR 05-2048 MCA

**JOE BARROS**,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** comes before the Court on Defendant Joe Barros' *Motion to Suppress Evidence* [Doc. 62] filed on May 20, 2007.  The Court held a hearing on Defendant's motion in Albuquerque, New Mexico, on August 3, 2007.  Having fully considered the parties' submissions, the applicable law, the evidence and the arguments of counsel presented at the hearing, and being fully advised in the premises, the Court denies Defendant's motion based upon the findings of fact and conclusions of law set forth below.

## I.   FINDINGS OF FACT

1.      At approximately 12:50 p.m. on Sunday, April 10, 2005,  an armed robbery occurred at the Domino's pizza store at 2418 Southern Boulevard in Rio Rancho, New Mexico.

2.      Rio Rancho police officer Brian Thacker was dispatched to the pizza store in response to a 911 call shortly after the robber had fled.

3.      Upon arriving at the pizza store, Officer Thacker interviewed the Domino's employees who witnessed the robbery and gathered written narrative statements from them.

4.      Later that afternoon, Officer Thacker prepared a search warrant affidavit in which he summarized some of the information that the Dominos employees provided to him in their written narrative statements and in the oral statements taken when he interviewed them.

5.      According to Officer Thacker's affidavit, the employees whom the suspect initially confronted during the robbery described the suspect as a dark-complected male in his 40's, approximately five feet, five inches tall and 130 pounds, wearing a black leather jacket and sunglasses, and brandishing a solid silver handgun.  [Ex. 6.]

6.      According to Officer Thacker's affidavit, the employees who were robbed went to the back of the store to notify the store manager immediately after the robbery, and the store manager responded by running to the front of the store, where he was able to obtain a license plate number and a description of the vehicle in which the suspect fled.  [Ex. 6.]

7.      The suspect's vehicle was described in Officer Thacker's affidavit as a gold in color Chevrolet Monte Carlo, bearing New Mexico license plate FKP-699.  [Ex. 6.]

8.      According to Officer Thacker's affidavit, this license plate number returned to a gold in color 1985 Buick Coupe registered to a Joe Barros at 1821 Peach Road in Rio Rancho, New Mexico.  [Ex. 6; Tr. 8-3-07.]

9.      The driver's license records for Joe Barros indicated that he was five feet, six inches tall, 130 pounds, about 53 years old, with black/grey hair and brown eyes; Officer

Thacker included this information about Joe Barros' physical characteristics in his affidavit. [Ex. 6; Tr. 8-3-07.]

10.     Officer Thacker mentioned the name "Joe Barros" to other officers, who identified him as a gang member who was on probation/parole for murder on the date of the robbery; Officer Thacker included this information about the criminal history of Joe Barros in the search warrant affidavit.  [Ex. 6; Tr. 8-3-07.]

11.     Based on his account of the descriptions given by the store employees and the information revealed from the officers' research on the license-plate number, driver's license, and criminal history of Joe Barros, Officer Thacker's search warrant affidavit requested permission to search the residence listed on Joe Barros' vehicle registration and driver's license records, *i.e.*, 1821 Peach Road NE, in Rio Rancho, New Mexico.  [Ex. 6.]

12.     As the objects of the requested search, Officer Thacker's affidavit specified a solid chrome automatic handgun, a black leather jacket, a pair of large prescription glasses/sunglasses, and the 1985 Buick coupe with the license-plate number reported by Mr. Cardenas after the robbery.  [Ex. 6, 7.]

13.     New Mexico State District Judge George Eichwald approved and signed the search warrant in the late afternoon or early evening on Sunday, April 10, 2005, but the search warrant documents were not file-stamped by the court clerk's office until the next regular business day, which was Monday, April 11, 2005.  [Ex. 6, 7.]

14.     Shortly after 7:45 p.m. on April 10, 2005, Rio Rancho police officers observed Defendant's 1985 Buick coupe (with the license-plate number reported by the Dominos

employees) parked in the driveway at the 1821 Peach Road address.  A team of officers then decided to execute the search warrant (as well as an arrest warrant based on the probation/parole violation referenced in Mr. Thacker's affidavit).

15.     After clearing the residence, the officers were able to execute the search warrant, whereupon they seized Defendant's gold Buick coupe parked in the driveway, a black leather jacket from his person, and two pairs of sunglasses.

16.     The officers also located and seized a silver-colored semi-automatic handgun from beneath the bed mattress in the room where Defendant was staying.

17.     On August 3, 2007, the Court held a hearing on Defendant's motion to suppress, at which time Defendant was afforded the opportunity to make an offer of proof with respect to his claim that the search warrant affidavit contained false information.  [Tr. 8-3-07.]

18.     At the hearing, Defendant's counsel tendered copies of the Dominos employees' written narrative statements, which are largely consistent with the account provided in Officer Thacker's affidavit, although there are some minor discrepancies or variations in word choice.

19.     The first witness statement describes the robber as a man who was dark-skinned, with glasses, a black leather jacket, and a silver handgun.  [Ex. 1.]

20.      The second witness statement describes the robber as a man about 5' 6" wearing a black leather jacket and sunglasses with a solid silver handgun who got into a gold tannish looking older car and drove east out of the store's parking lot.  [Ex. 2.]

-4-

21.     A third witness statement by a store employee who was about ten feet behind the counter at the time of the robbery describes the robber as a gentleman about 45-55 years old, 5' 6" to 5' 8" in height, wearing a black leather coat, black aviator tint with a gold frame, and a light brown hat, with a chrome automatic PPK 25-38 caliber gun, who got into a late 80's gold Monte Carlo with license plate number FKP999.  [Ex. 3.]

22.     A fourth witness statement by the store manager describes the robber's vehicle as a darker gold color Monte Carlo rag top with license plate FKP 999.  [Ex. 4.]

23.     These four written narrative statements do not reflect the totality of the information supplied to Officer Thacker by the store employees, because he orally obtained additional information from them during his interviews.

24.     Among the information that Officer Thacker obtained during subsequent interviews with the store employees were the results of photo arrays, which were not conclusive with respect to identifying Defendant as the robber; the results of the photo arrays were not included in the search warrant affidavit.

25.     In his testimony at the hearing on August 3, 2007, Officer Thacker acknowledged that there was a clerical or typographical error in the license plate number listed at the bottom of the first page of the search warrant affidavit, which reads "FKP 699" instead of "FKP 999"; however, the affidavit elsewhere correctly lists the license plate number reported by the store employees, and this license plate number was registered to Joe Barros at 1821 Peach Road in Rio Rancho, as reported in the affidavit.  [Ex. 6; Tr. 8-3-07.]

26.     In his testimony at the hearing on August 3, 2007, Officer Thacker also acknowledged using the word "defendant" instead of "suspect" or "robber" when summarizing some of the store employees' statements; however, it is clear from the context that the officer meant to use the word "defendant" in a generic sense as a synonym for "suspect" or "subject," and that his use of the word "defendant" would be so construed by the state court judge who reviewed his affidavit.

27.     Even if the statements using the term "defendant" in reference to the store employees' accounts of the robbery were stricken from the affidavit, the totality of the remaining portions of the affidavit would still provide probable cause to support the issuance of the search warrant, because the affidavit uses the word "suspect" or "subject" when describing the store employee's statements regarding the robber's physical characteristics and the description of the robber's vehicle, including its license plate number.

28.     Officer Thacker's used the word "defendant" in his affidavit because he saw that word used in a template from an earlier search warrant that he referenced in preparing his affidavit.

29.     The errors in word choice in Officer Thacker's affidavit, as well as his attempt to summarize information instead of quoting his sources verbatim, most likely result from the fact that the affidavit was prepared in haste during an ongoing and time-sensitive police investigation on the date of the robbery, as well as the fact that this affidavit was the first one Officer Thacker had ever prepared in his 18-month career as a law enforcement officer.

30.     Defendant's offer of proof at the suppression hearing, which included an opportunity to question Officer Thacker and present exhibits, provided no credible basis for finding that the officer intentionally gave false or misleading information in his search warrant affidavit or that he acted with reckless disregard for the truth in preparing that affidavit.  [Tr. 8-3-07.]

31.     Defendant failed to make a threshold showing that a further evidentiary hearing is required to determine whether the search warrant described above is tainted by intentional falsehood or reckless disregard for the truth on the part of the affiant.

32.     The officers were acting in good faith when preparing and executing the search warrant described above.

33.     Based on the totality of the circumstances, the search warrant affidavit provided a substantial basis for finding probable cause to support the search warrant issued on April 10, 2005, and that warrant was not tainted by any violation of the Fourth Amendment.

34.     The incriminating evidence obtained during the execution of the search warrant on April 10, 2005, would have been inevitably discovered during the execution of the arrest warrant that the officers were simultaneously serving on that occasion in conjunction with Defendant's alleged probation/parole violation.

## II.     LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The primary issues raised by Defendant's motion to suppress are whether the search warrant affidavit dated April 10, 2005, contains a legally sufficient factual basis to support

the state court judge's finding of probable cause to search Defendant's residence, and whether that affidavit is tainted by deliberate falsehood or reckless disregard for the truth on the part of the affiant.  Before turning to those issues, however, it is necessary to address the requirements of the Federal Rules of Criminal Procedure with respect to raising and preserving arguments for the Court's review in a motion to suppress.

### A.    The Procedure for Timely Filing and Briefing a Motion to Suppress

The Court's discussion of these procedural requirements is prompted by defense counsel's unorthodox approach to briefing his motion in this case.  In addition to the *Motion to Suppress* [Doc. 62] filed on May 20, 2007, Defendant's counsel filed (1) a *Reply to Government's Response to Motion to Suppress* [Doc. 70] on June 11, 2007; (2) a second *Reply to Prosecution's Response to Defendant's Motion to Suppress Evidence* [Doc. 88] on July 31, 2007; and (3) an *Amendment to Reply to the Prosecution's Response to Defendant's Motion to Suppress Evidence* [Doc. 92] on August 2, 2007, one day before the suppression hearing.  All of these documents purportedly were filed in reply to a single response brief from the Government dated May 29, 2007.  [Doc. 66.]  None of Defendant's filings regarding his motion to suppress contain any supporting affidavits or exhibits.

Under the Local Rules for the District of New Mexico, briefing on Defendant's motion was complete after he filed his first reply brief.  The Local Rules do not permit counsel to submit any further briefing (such as a surreply) without first requesting and obtaining leave of the Court.  See D.N.M. LR-Crim. 47.8.  In this case, Defendant's counsel failed to seek leave of court, or show good cause why such leave should be granted, before

he filed his second and third reply briefs regarding his motion to suppress.  Accordingly, the Local  Rules call for these additional reply briefs to be stricken from the record.

Defense counsel's multiple untimely reply briefs seem to follow a strategy of deliberating concealing certain facts or arguments from the Court and opposing counsel in order to gain a tactical advantage.  In his first reply brief, for example, Defendant's counsel wrote that he "intentionally understated the facts on which the Motion to Suppress was directed" and "will provide some (but intentionally not all) of the factual problems with the search warrant in this matter" in order to prevent the Government from "shor[ing] up their problems" in advance of a hearing or trial.  [Doc. 70.]  In his second reply brief, defense counsel again states that he is "habitually cautious in itemizing flaws in a search warrant, for fear the flaws may be resolved."  [Doc. 88.]

There is no colorable reading of the Federal Rules of Criminal Procedure or the Local Rules which permits counsel to intentionally omit material facts or arguments which form the basis for a motion in order to ambush an opponent or the Court at a later date after the motions deadline has passed and briefing has been completed.  On the contrary, Fed. R. Crim. P. 47 states that:  "A motion must state the grounds on which it is based and the relief or order sought."  D.N.M.LR-Cr. 47.7 further states that:  "A motion, response or reply must cite authority in support of legal positions advanced."

These rules also limit the time period during which issues or arguments may be raised in a motion to suppress.  Fed. R. Crim. P. 12(b)(3) includes "a motion to suppress evidence" among the types of motions that "must be raised before trial."  Fed. R. Crim. P. 12(c)

provides that courts "may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions."

In accordance with Fed. R. Crim. P. 12(c) and the standard procedure in this District, the Court imposed a deadline for pretrial motions of July 28, 2006, when Defendant was first arraigned on July 18, 2006. [Doc. 11.] The Court extended the pretrial motions deadline several times, with the latest extension expiring on June 11, 2007. [Doc. 65, 77.]

This deadline is enforced by Fed. R. Crim. P. 12(e), which states that: "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by an extension the court provides." The deadline applies not only to the filing of a motion itself, but also to the disclosure of the grounds on which the motion is based. Thus, where a defendant's "motion to suppress did not suggest, much less 'make clear,' that he was objecting to the admission of the evidence" on a particular ground, he waived that argument under Fed. R. Crim. P. 12(e) and could not raise it for the first time on appeal. See United States v. Hewlett, 395 F.3d 458, 460 (D.C. Cir. 2005). "Even when a party has brought a pretrial suppression motion . . . , any new suppression arguments raised for the first time on appeal that were not contained in the original suppression motion will be deemed waived under Rule 12(e)." United States v. Lopez-Medina, 461 F.3d 724, 738 (6th Cir. 2006).

The Tenth Circuit has noted that "[t]here are a number of policy reasons for requiring defendants to move to suppress evidence prior to trial" in accordance with the deadline

imposed under Fed. R. Crim. P. 12.  See United States v. Brooks, 438 F.3d 1231, 1240 (10th

Cir. 2006).   Among these reasons are that,

> if a defendant is able to challenge the inclusion of evidence [for the first time]
> upon appeal, the government will face the difficult task of defending itself
> based on a potentially meager record.  Moreover, although the government can
> appeal an adverse ruling on a suppression motion prior to trial, it cannot do so
> once jeopardy has attached, as would be the case on appeal.

Id. (citing United States v. Chavez-Valencia, 116 F.3d 127, 131 (5th Cir. 1997)).  While the

Tenth Circuit stated this rationale in the context of declining to review a suppression issue

raised for the first time on appeal, the same rationale also applies to the situation at issue

here, where a defendant intentionally decides to withhold facts or arguments relating to his

motion until the eve of trial when the motions deadline has long passed and the briefing

allowed under the rules has been completed.  In this situation as well, the Government is not

afforded a fair opportunity to respond or make a record before the trial commences and

jeopardy attaches.

Relief from the waiver of a suppression issue under Fed. R. Crim. P. 12(e) may only

be granted for good cause.  See United States v. Salgado-Campos, 442 F.3d 684, 686 (8th

Cir. 2006).  "Tardiness due to 'negligence, oversight, or laziness'" does not constitute good

cause.  Id. (quoting United States v. Chavez, 902 F.2d 259, 263-64 (4th Cir. 1990)); accord

United States v. Johnson, 415 F.3d 728, 730-31 (7th Cir. 2005).

I find that Defendant's counsel has not established good cause for relief from the

waiver that would otherwise apply under Fed. R. Crim. P. 12(e) in this case.  At the

suppression hearing on August 3, 2007, Defendant's counsel stated that the reason he filed

his second reply brief on July 31, 2007, was that he didn't realize he had previously filed his first reply brief more than a month earlier on June 11, 2007. [Doc. 70, 88.] Defendant's counsel offered no explanation of what authority entitled him to then file a third reply brief on August 2, 2007, after having filed his second reply brief two days earlier. [Doc. 92.] Further, Defendant's motion papers seem to admit that he is trying to ambush the Government in exactly the manner that the Tenth Circuit prohibited in Brooks.

For these reasons, the Court will focus its analysis on the issues that were timely raised under the rules cited above, *i.e.*, whether the search warrant affidavit dated April 10, 2005, contains a legally sufficient factual basis to support the state court judge's finding of probable cause to search Defendant's residence, and whether that affidavit is tainted by deliberate falsehood or reckless disregard for the truth on the part of the affiant. Other grounds for suppressing evidence or statements are deemed waived by operation of Fed. R. Crim. P. 12(e).

In particular, the Court notes that Defendant withdrew his second motion in limine and clarified at the suppression hearing that his motion to suppress only implicated his post-arrest statements insofar as those statements would constitute "fruit of the poisonous tree" if the Court were to hold that the search warrant was invalid. Thus, Defendant never timely raised the issue of whether his post-arrest statements were taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), or the Due Process Clause. Defendant also never brought a timely challenge to the arrest warrant concerning his alleged violation of probation/parole, which is referenced in Officer Thacker's search warrant affidavit.

-12-

**B.**    **The Accuracy of the Search Warrant Affidavit**

In addition to the arrest warrant concerning the probation/parole violation,  the officers who performed the search in this case were relying on a search warrant issued by a state district judge.  Accordingly, the search conducted pursuant to the warrant is presumed to be reasonable under the Fourth Amendment, and it is Defendant's burden to prove otherwise.  See United States v. Carhee, 27 F.3d 1493, 1496 & n.3 (10th Cir. 1994).  A defendant may meet his burden of proof in this context if he can show that the search warrant's finding of probable cause depends on false or misleading information that the affiant has supplied with the knowledge that it is false or with reckless disregard for the truth. See United States v. Artez, 389 F.3d 1106, 1116 (10th Cir. 2004).  In this regard, a defendant may request an evidentiary hearing to test the veracity of a search warrant affidavit under the procedural framework articulated in Franks v. Delaware, 438 U.S. 154, 171-72 (1978).

Under this framework, an evidentiary hearing is not required unless the defendant alleges deliberate falsehood or reckless disregard for the truth on the part of the affiant, and those allegations are accompanied by a sufficient offer of proof.  See Artez, 389 F.3d at 1116.   "Allegations of negligence or innocent mistake" are insufficient to warrant an evidentiary hearing under Franks.  See id.

To support an allegation regarding the affiant's deliberate falsehood or reckless disregard for the truth, a defendant should provide affidavits of witnesses or satisfactorily explain their absence.  Such affidavits or explanations should include a statement of supporting reasons, not merely conclusory denials.  In addition, a defendant seeking an

evidentiary hearing must show that, after the challenged portions of the affidavit are stricken, the remaining content of the affidavit is not sufficient to support a finding of probable cause. See id.; Franks, 438 U.S. at 171.

Defendant's motion papers do not meet this standard.  Defendant only makes a passing reference to Franks in his reply brief.  [Doc. 70.]  His motion papers supplied no contrary affidavits of his own, nor does he satisfactorily explain their absence.  It was not until the motion hearing on August 3, 2007, that Defendant presented various police reports and witness statements as exhibits in support of his motion.  Despite being given the opportunity to introduce these exhibits and cross-examine Officer Thacker at the suppression hearing, Defendant has failed to make a credible showing that the officer deliberately, or with reckless disregard for the truth, included false or misleading statements in the search warrant affidavit.

For the most part, Defendant's motion rests on mere clerical or grammatical issues which do not affect the substance of the warrant.  For example, he notes that the warrant was file-stamped on April 11, 2005, instead of the date it was signed on April 10, 2005.  There is an obvious reason for this discrepancy, namely that the robbery occurred on a Sunday, which is not a regular business day for the court clerk's office.  The file-stamped date on the search warrant does not mean that the warrant was issued after the search occurred.  Both the search warrant itself and Officer Thacker's testimony indicate that the warrant was signed by Judge Eichwald on April 10, 2005, before the search occurred.

-14-

The most that Defendant has shown at this point is the officer's poor grammar or imprecise word choice in summarizing some of the information supplied by the store employees. For example, the affidavit uses the term "defendant" interchangeably with "robber" or "suspect" to describe some of the store employees' statements, and the word "chrome" is sometimes substituted for "silver" in describing the color of the gun. Taken in context, however, "silver" is synonymous with "chrome," and "defendant" is synonymous with "suspect" or "subject."

Even if the Court were to strike those portions of the affidavit which use the term "defendant" instead of "robber" or "suspect" to describe the store employees' statements, the remaining portions of the affidavit still provide a description of the "suspect's" vehicle as well as a physical description of the "subject." In particular, the affidavit states that "the suspect fled the area in a gold in color Chevrolet Monte Carlo, bearing NM FKP-699,"[1] and that "the employees described the subject to be a dark complected male in his 40's. He was approximately 5'5", 130 pounds and was last seen wearing a black leather jacket and sunglasses." [Ex. 1 to Doc. 66-2.] This information alone provides enough detail for the officer to perform the records check which linked the robbery to Defendant and his vehicle.

C.     **The Legal Sufficiency of the Search Warrant Affidavit**

Absent a threshold showing that a <u>Franks</u> hearing is required, the remaining question is whether the affidavit on its face provides sufficient information to establish probable cause

---

[1]As previously noted, there is a typographical error in one of the affidavit's references to the suspect's license plate number, but the correct license plate number is included elsewhere in the affidavit.

for the search.  The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const., amend. IV.  Thus, a search warrant affidavit can be facially deficient if it fails to specify enough information to establish probable cause for the issuance of a warrant.  See, e.g., United States v. Gonzales, 399 F.3d 1225, 1231 (10th Cir. 2005) (rejecting a warrant for the search of a residence that was issued two days after the automobile accident described in the affidavit, where the affidavit failed to specify who owned the vehicle in question or what connected the residence to the suspect or the vehicle).

Courts have held that the term "probable cause" is not self-defining, but requires an inquiry based upon common sense informed by the totality of the circumstances found in the particular case.  See United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213 (1983)).  In determining whether probable cause exists to support a search warrant, a judge's task

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Artez, 389 F.3d at 1111 (quoting Gates, 462 U.S. at 238).

A judge's decision to issue a warrant is entitled to "great deference" by a reviewing court.  Gates, 462 U.S. at 236.  Accordingly, a reviewing court "need only ask whether, under the totality of the circumstances presented in the affidavit, the [issuing] judge had a 'substantial basis' for determining that probable cause existed."  Artez, 389 F.3d at 1111

-16-

(quoting Gates, 462 U.S. at 238-39).  In this regard, the probable-cause standard does "'not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'"   United States v. Pollack, 895 F.2d 686, 691 (10th Cir. 1990) (quoting Adams v. Williams, 407 U.S. 143, 148-49 (1972)).

Thus, the officer in this case was not required to establish that the robbery or gun crime in this case met all the essential elements of the federal crimes charged in the *Superseding Indictment*.  "The fact that the police did not, at the time of arrest, know exactly what crime had occurred is not relevant, so long as they had probable cause to believe '*an* offense' had been committed." United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)).

Similarly, the minor discrepancies in the descriptions of the suspect's vehicle and appearance do not defeat a showing of probable cause.  Even if Defendant's vehicle was a "Buick coupe" instead of the "Chevrolet Monte Carlo" described by the store employee, the remaining features of the employee's description, including the license plate number and gold color, were enough to establish the link to Defendant's vehicle for purposes of a probable cause determination, especially considering that the license plate number given by the store employee corresponded to a vehicle that was registered to an individual with an extensive criminal history residing at an address located in the same city as the store where the robbery took place.  Similarly, the fact that some of the store employees' reported the suspect as being "approximately" five feet, five inches and in his 40's, instead of Defendant's actual age and the exact height listed on his driver's license, does not defeat a showing of

probable cause when the totality of the circumstances are considered.[2]  Taken together, there were enough similarities concerning the suspect's vehicle and the suspect's appearance to warrant a fair probability that Defendant was the robber and that evidence of the robbery (including the getaway vehicle) would be found at the address where Defendant's vehicle was registered and where Defendant resided on the same date as the robbery and in the same city where the robbery occurred.

Further, a determination of probable cause in this case does not require the witnesses to positively identify Defendant in a photo array or to positively match his fingerprints or other biometric information with the evidence found at the crime scene.  The veracity of crime victims, or crime-scene bystanders, ordinarily is assumed in making determinations of reasonable suspicion and probable cause.  See United States v. Blount, 123 F.3d 831, 835 (5th Cir. 1997) (en banc).  Police officers, however, "may weigh the credibility of witnesses" and are not required to believe one witness's testimony over that of another in making such a determination.  Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998).

In some cases, the information provided by a witness or bystander may be so sparse or indefinite as to require further investigation in order to determine its credibility for purposes of establishing probable cause.  See Cortez v. McCauley, 478 F.3d 1108, 1116-19

---

[2]At the suppression hearing, Defendant's counsel represented that Defendant is only five feet, three inches tall; however, no evidence was introduced to support this representation, and arguments of counsel are not evidence.   Similarly, Defendant offered no photographic evidence, such as the picture from his driver's license, to show what he looked like, or what the officers thought he looked like, at the time of the robbery investigation that preceded the issuance of the warrant.

(10th Cir. 2007) (en banc) (collecting cases).   But such defects are not present in the search warrant affidavit at issue in this case, which does not rely on sparse or indefinite hearsay from unknown or unnamed individuals.  Instead, the search-warrant affidavit reports specific information taken directly from the crime victims or bystanders at the pizza store whose identities are known.  These victims or bystanders gave a physical description of the robber and a description of his vehicle, including the license-plate number.

The search-warrant affidavit reporting these statements from the victims or bystanders at the pizza store was not relying on these witnesses' "bare allegation of wrongdoing." Cortez, 478 F.3d at 1119.  Instead, the affidavit reports the results of additional investigation that the affiant undertook to corroborate the employees' story.  In particular, the officer researched the license-plate number to determine whether its description matched the description given by the store manager.  Although the records check revealed a Buick instead of the Chevrolet described by the manager, both the records check and the manager's description reported the car as being an older gold coupe.[3]

To further corroborate the match suggested by the license-plate number, the officer researched government records regarding the vehicle's registered owner and compared the information listed on the owner's driver's license with that given by the store employees.

_____

[3]The Government requested that the Court take judicial notice of the fact that Buick and Chevrolet vehicles are both manufactured by General Motors.   [Tr. 8-3-07.]  In addition, the Government's trial exhibit list includes photos of both vehicles for comparison purposes [Doc. 41], and defense counsel made reference to a page of such comparison photos at the suppression hearing [Ex. 9], under the mistaken impression that such photos depicted Defendant's actual vehicle.  [Tr. 8-3-07.]

Again, there were similarities between the height and age listed on the driver's license information, and the height and age given in the store employees' description of the robber. The registered owner's address in Rio Rancho also was consistent with the use of his car at a robbery in the same city on the same date.

The officer then researched Defendant's criminal history and determined that he was reportedly a gang member with a prior felony conviction and was believed to be in violation of his probation/parole at the time of the robbery. While criminal history alone is not sufficient to support a finding of probable cause, it may support such a finding when combined with the other factors present here. See Artez, 389 F.3d at 1114-15. When a suspect is reported to have brandished a firearm, for example, information regarding a prior felony conviction is relevant to determining whether there is probable cause to believe that suspect may have committed the offense of being a felon in possession of a firearm.

Finally, the search warrant affidavit alleges a specific nexus among the information gleaned from the records pertaining to the license-plate number, the Defendant, and the location of the search, *i.e.*, the Rio Rancho address listed on Defendant's driver's license or vehicle registration. In addition to stating that "[t]he license plate returned to a Joe Barros located at 1821 Peach Rd. in Rio Rancho" [Ex. 1 to Doc. 66-2], the affidavit specifies that the robbery occurred in the same city earlier on the same date that the affidavit was written. In these respects, the officer's affidavit in this case does not suffer from the same obvious defects as the search warrant affidavit at issue in Gonzales, 399 F.3d at 1231. Viewing all of the above factors under the "totality of the circumstances" approach articulated in Gates,

462 U.S. at 233, the search warrant affidavit on its face provided the state district judge with a substantial basis for finding probable cause to support the issuance of a search warrant for Defendant's residence at 1821 Peach Rd. NE, in Rio Rancho on April 10, 2005.

Even if such a substantial basis for a finding of probable cause was lacking, the Government may, in the alternative, fall back on the "good faith" exception to the warrant requirement articulated in United States v. Leon, 468 U.S. 897 (1984). See United States v. Danhauer, 229 F.3d 1002, 1006-08 (10th Cir. 2000). The good-faith exception recognizes that the purposes of the exclusionary rule are not served by suppressing the fruits of a search conducted pursuant to a warrant issued in error by a neutral and detached judge where the law enforcement officer who obtains and executes the warrant has done so in good faith. "Penalizing the officer for the magistrate [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921.

The above discussion of why the search warrant affidavit provided a substantial basis for the state district judge's finding of probable cause weighs strongly against a determination that the state district judge wholly abandoned his judicial role or that the warrant and accompanying affidavit are so facially deficient or lacking in indicia of probable cause that the officers who executed the warrant could not have reasonably believed they were valid. Cf. Dannhauer, 229 F.3d at 1006-07 (listing circumstances in which the good-faith exception does not apply). While Officer Thacker's search warrant affidavit could have been more carefully worded or included greater detail, any technical deficiencies in this

regard do not add up to the kind of obvious substantive defect recognized in Gonzales, 399 F.3d at 1231. For these reasons, the "good faith" exception to the warrant requirement applies in the event that the state district judge erred in finding probable cause.

### D.   The "Fruit of the Poisonous Tree" Doctrine

Because I conclude that the search at issue in this case did not violate the Fourth Amendment, it follows that Defendant may not rely on the "fruit of the poisonous tree" doctrine as a basis for suppressing any evidence or statements subsequently obtained by police as a result of that search.  "A party seeking exclusion of evidence on Fourth Amendment grounds must demonstrate both actual police misconduct that violated the defendant's Fourth Amendment rights, and that the evidence to be excluded was in fact a product of the police misconduct."  United States v. Williams, 356 F.3d 1268, 1272 (10th Cir. 2004) (citing United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir.2001) and United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir.2000)). "'Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the  taint of the unlawful conduct.'"  DeLuca, 269 F.3d at 1132 (quoting Nava-Ramirez, 210 F.3d at 1131) (citations omitted).

In this case, Defendant has failed to make either of the two showings required to invoke the "fruit of the poisonous tree" doctrine.  Apart from his challenge to the search warrant and accompanying affidavit dated April 10, 2005, Defendant has not timely provided

any evidence or authority in support of an alternative basis for suppressing the evidence seized from his residence or his post-arrest statements.  Even if the officers had proceeded without the search warrant in this case, the Court still would have to consider the Government's argument that the arrest warrant pertaining to Defendant's alleged probation/parole violation would have provided an independent means by which the police inevitably would have discovered the evidence in question.  See United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir. 2005);  United States v. Souza, 223 F.3d 1197, 1206 (10th Cir. 2000).

## III.   CONCLUSION

For the foregoing reasons, the issues raised in Defendant's motion do not provide a basis for invoking the exclusionary rule with respect to any evidence seized from Defendant's residence or any post-arrest statements that ensued from that seizure.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion to Suppress Evidence* [Doc.  62] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's second *Reply to Prosecution's Response to Defendant's Motion to Suppress Evidence* [Doc. 88] filed on July 31, 2007, and Defendant's *Amendment to Reply to the Prosecution's Response to Defendant's Motion to Suppress Evidence* [Doc. 92] filed on August 2, 2007, are hereby **STRICKEN**.

**SO ORDERED** this 7th day of August, 2007, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-23-