IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        No. CR 05-2048 MCA

JOE BARROS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions:  (1)  the *United States' Motion in Limine* [Doc. 40] filed on March 6, 2007; (2) Defendant's *Motion for Early Jencks Act Disclosure of Witness Statements and Investigative Notes* [Doc. 50] filed on April 20, 2007, and supplemented by (3) Defendant's *Motion to Compel Production of Officers' Rough Investigative Notes* [Doc. 73] filed on June 14, 2007; (4) Defendant's *First Motion in Limine* [Doc. 59] filed on May 9, 2007; (5) Defendant's *Second Motion in Limine* [Doc. 69] filed on June 11, 2007, and (6) Defendant's *Motion to Withdraw Mr. Barros' Second Motion in Limine* [Doc. 91] filed on August 2, 2007.  Having fully considered the parties' submissions, the applicable law, the evidence and the arguments of counsel presented at the Call of the Calendar, and being fully advised in the premises, the Court grants in part and denies in part the United States' motion in limine, grants in part and denies in part

Defendant's first motion in limine, grants Defendant's motion to withdraw his second motion in limine, and denies Defendant's discovery motions as moot for the reasons set forth below.

## I.    __BACKGROUND__

Defendant Joe Barros is charged with the following offenses in a *Superseding Indictment* [Doc. 27] filed on November 15, 2006: (1) interference with commerce by threats and violence in violation of 18 U.S.C. § 1951, (2) brandishing, using, and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and (3) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). All of these charges arise from a police investigation of an armed robbery at a Dominos pizza store in Rio Rancho, New Mexico, on or about April 10, 2005.

The facts regarding the armed robbery and the issuance of a search warrant for Defendant's residence at 1821 Peach Road in Rio Rancho are set forth in further detail in the *Memorandum Opinion and Order Denying Defendant's Motion to Suppress* [Doc. 97] filed on August 7, 2007. According to the Government's proffer, the execution of the warrant began on the evening of April 10, 2005, when Sergeant Pete Camacho issued commands over a police loudspeaker directing all the occupants of 1821 Peach Road to exit the residence. Defendant's older sister, Lupe Rivera, and her son, Omar Rivera, came out of the residence in response to Sergeant Camacho's commands over the loudspeaker. Defendant allegedly did not exit the residence until approximately 60 to 90 minutes after the first loudspeaker announcement.

The parties disagree as to what transpired during the period between the first loudspeaker announcement and Defendant's exit from the residence.  Defendant alleges in his motion papers that he did not come out of the residence because he was asleep or otherwise unaware that the officer's commands were directed at him or his residence.  The officers allege that, when Omar Rivera exited the residence, he told them that he was Defendant's nephew and that Defendant was not going to come out peacefully.  The officers then called a Special Weapons and Tactical (SWAT) Team to the residence and continued their efforts to summon Defendant from the residence before he agreed to come out and be taken into police custody.

After clearing the residence, the officers were able to execute the search warrant, whereupon they seized a black leather jacket from Defendant's person and two pairs of sunglasses.  The officers also allegedly located and seized a silver-colored semi-automatic handgun from beneath the bed mattress in the room where Defendant was staying, and six rounds of ammunition located in the garage. The Government contends that Defendant voluntarily made a post-arrest statement identifying the location of the handgun.

In addition to the murder conviction for which he was on probation/parole at the time of the above-described events, Defendant has several other prior felony convictions.  Insofar as some of these prior convictions involve "serious violent felonies" under 18 U.S.C. § 3559(c)(1), the Government has filed an enhancement *Information* [Doc. 31] indicating its intent to seek a mandatory life sentence if Defendant is convicted of the crimes charged in Counts 1 or 2 of the *Superseding Indictment*.

II.   **ANALYSIS**

A.    **The United States' Motion in Limine**

On March 6, 2007, the Government filed a motion seeking to exclude two categories of evidence from being introduced at trial:  (1) an alibi defense, and (2) the sentence that Defendant faces if the jury finds him guilty of any of the crimes charged in the *Superseding Indictment*.  Defendant never filed a timely written response to this motion.

The alibi defense, however, was addressed informally at the calendar call on March 8, 2007, where the Court set a deadline of April 20, 2007, for Defendant's notice of alibi defense, that is reflected in the clerk's minutes for that hearing.  [Doc. 43.]  Defendant filed his notice of alibi on that date, claiming that he was driving around in his car and meeting with various relatives around the time of the robbery.  [Doc. 47.]  Thus, the Government's motion to exclude the alibi defense based on untimely notice is denied as moot.

I reach a different conclusion with regard to the Government's motion to preclude Defendant from raising sentencing consequences before the jury.  The Court's stock jury instructions will tell the jury that:  "the punishment provided by law for the offenses charged in the indictment is a matter exclusively within the province of the judge, and should never be considered by you in any way, in arriving at an impartial verdict as to the guilt or innocence of the Defendant."  [Stock Instruction No. CR.22B.]  The Tenth Circuit Pattern Criminal Jury Instruction No. 1.20 contains similar language.

These stock or pattern instructions are based on solid precedent from the Supreme Court, which has stated in no uncertain terms that "the jury has no sentencing function and

should reach its verdict without regard to what sentence might be imposed." Rogers v. United States, 422 U.S. 35, 40 (1975). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." Shannon v. United States, 512 U.S. 573, 579 (1994); accord Neely v. Newton, 149 F.3d 1074, 1085-86 (10th Cir. 1998). Further, "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial," United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980), because "providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Shannon, 512 U.S. at 579.

For these reasons, the Tenth Circuit has specifically held that jurors are not to be instructed that an offense carries a mandatory minimum sentence. See United States v. Parrish, 925 F.2d 1293, 1299 (10th Cir.1991), abrogated in part on other grounds by Bailey v. United States, 516 U.S. 137 (1995). Accordingly, the Government's motion in limine is granted in part with respect to excluding any reference to potential sentencing consequences at any point during the trial, including jury selection, witness testimony, and closing argument.

**B.      Defendant's Discovery Motions**

On April 20, 2007, Defendant moved for early disclosure of Jencks Act materials, *i.e.*, prior testimony or statements of a government witness who testifies at trial. [Doc. 50.] While Defendant requested disclosure of such materials at least thirty (30) days prior to trial, the Jencks Act does not require such disclosures to occur until the Government tenders the

witness for cross-examination at trial.  See 18 U.S.C. § 3500.  Moreover, in its response brief filed on May 9, 2007, and again at the Call of the Calendar, the Government stated that it has already disclosed all of the witness statements in its possession in this case, and that the Government does not intend to call all of the individuals listed in its preliminary witness lists (many of whom were merely officers present at the residence at the time of Defendant's arrest and the execution of the search warrant).

On June 14, 2007, Defendant also moved to compel production of the rough investigative notes taken by officers involved in the investigation of the charged offenses. [Doc. 73.]  In response to this motion, the Government stated that to the extent that any rough investigative notes still exist, they will be disclosed pursuant to the Jencks Act as well.  [Doc. 76.]  Defendant had the opportunity to question Officer Thacker about this topic at the suppression hearing on August 3, 2007, and his responses indicate that he did not keep any rough investigative notes.  [Tr. 8-3-07.]   At the Call of the Calendar, the Government also confirmed that no rough investigative notes generated by its witnesses were found to exist. [Tr. 8-9-07.]   For these reasons, Defendant's discovery motions are denied as moot.

### C.   **Defendant's First Motion in Limine**

In his first motion in limine, Defendant invokes the Federal Rules of Evidence as a basis for precluding the Government from introducing the following categories of evidence during its case-in-chief:  (1) the quantity and details of Defendant's prior felony convictions, and (2) the details of the alleged SWAT standoff that preceded Defendant's arrest.  Although his motion papers are unclear on this point, it appears that Defendant also seeks to introduce

affirmative evidence of his good character in the event that the prosecution is allowed to elicit testimony or other evidence about his prior convictions.

### 1.    Defendant's Prior Convictions and Character Evidence

Defendant's first motion in limine seeks to exclude evidence of his prior convictions and alludes to the possibility that he may seek to introduce character evidence in his own defense.  Defendant's motion papers, however, do not specifically identify which prior convictions he seeks to exclude for impeachment purposes, and with respect to each such conviction, why it is inadmissible under Fed R. Evid. 609.  Only in his reply brief does he allude to the possible exclusion of impeachment evidence under this rule, and his motion papers contain no specific tender of the character evidence he intends to offer.

The Court clarified these issues with counsel at the Call of the Calendar on August 9, 2007.  While a prior felony conviction is an essential element of the felon-in-possession-of-a-firearm charge alleged in Count 3 of the *Superseding Indictment*, the parties have entered into a stipulation as to Defendant's prior felony conviction for purposes of that charge.  In light of this stipulation, the Government will be precluded from introducing further evidence of Defendant's prior felony convictions during its case-in-chief.  See Old Chief v. United States, 519 U.S. 172, 174 (1997).  The Government also has not filed a notice of intent to introduce Defendant's prior convictions, or any prior bad acts for which he was previously convicted, under Fed. R. Evid. 404(b) during its case in chief.

The Government's counsel represented that, in the event Defendant elects to testify at trial or present evidence of his character for truthfulness, the Government's cross-

examination would touch on the already stipulated fact that he has a prior felony conviction but would not elicit any details regarding the nature and number of his prior felony convictions, unless Defendant or other defense witnesses opened the door by testifying as to his character for non-violence or "law-abidingness." [Tr. 8-9-07.] Combined with the parties' stipulation, the Government's representations at the Call of the Calendar render Defendant's motion moot with respect to this issue.

Therefore, it is unnecessary at this time to conduct a detailed analysis of the admissibility of each prior conviction, as the Court has done in other gun-crime and violent felony cases. See, e.g., United States v. Serrano, No. CR 03-1735 MCA, Doc. 51 (D.N.M. unpublished memorandum opinion and order filed Feb. 9, 2004); United States v. Contreras, No. CR 05-1150 MCA, Doc. 72 (D.N.M. unpublished memorandum opinion and order filed Aug. 3, 2006).

The Court will, however, revisit this issue during trial as needed if the scope of the defense witnesses' testimony changes or other unforeseen circumstances arise. To aid in this task, counsel are directed to warn both the Court and opposing counsel outside the jury's presence before offering character evidence or evidence of prior convictions during the trial so that opposing counsel has the opportunity to object and the Court has the opportunity to provide an informed ruling.

## 2.     Resistance to Arrest as Evincing Consciousness of Guilt

Defendant next seeks to exclude testimony or other evidence concerning the alleged "SWAT team standoff" that preceded his arrest at the residence in Rio Rancho where the

search warrant was executed.  In particular, Defendant seeks to exclude the use of the terms "SWAT, resistance, consciousness of guilt, [or] forced entry into the premises."  Although his motion papers do not cite a single rule of evidence or other authority on point, it appears that Defendant is invoking the balancing test under Fed. R. Evid. 403.  (Defendant mistakenly refers to the Federal Rules of Evidence as the Federal Rules of Criminal Procedure throughout his motion papers).  In his reply brief, Defendant also seeks to exclude as hearsay the statement that the officers attributed to him through his nephew (*i.e.*, that Defendant's nephew told officers that Defendant was in the residence but was not going to come out peacefully).

In response to this issue, the Government has cited numerous authorities which stand for the proposition that evidence of a defendant's flight or resistance to arrest is relevant and admissible for the purpose of showing his consciousness of guilt.  See United States v. Cruz-Mendez, 467 F.3d 1260, 1269 (10th Cir. 2006); United States v. Martinez, 681 F.2d 1248, 1257-59 (10th Cir. 1982); United States v. Ramirez, 460 F.2d 1322, 1323 (10th Cir. 1972). Indeed, the Tenth Circuit and other courts have in some cases approved jury instructions permitting jurors to infer consciousness of guilt from a defendant's flight or refusal to promptly submit to an arrest.  See, e.g., United States v. Slater, 971 F.2d 626, 636 (10th Cir. 1992), cited with approval in United States v. Cui Qin Zhang, 458 F.3d 1126, 1128 (10th Cir. 2006); United States v. Clark, 45 F.3d 1247, 1250 (8th Cir. 1995); United States v. Wright, 392 F.3d 1269, 1276-77 (11th Cir. 2004).

While there is debate about whether to include the issue in jury instructions or leave it to counsel's closing arguments, "'[i]t is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" Clark, 45 F.3d at 1250 (quoting 2 John H. Wigmore, Evidence § 276, at 122 (James H. Chadbourn rev. 1979)); Martinez, 681 F.2d at 1257 (same); Wright, 392 F.3d at 1277-78 (same). This fact becomes even more probative when the defendant knows that an officer is seeking to arrest him at the time of his resistance or flight, and when such resistance or flight occurs shortly after the commission of the crime or the defendant's discovery that he is accused of the crime. See Slater, 971 F.2d at 636.

Some courts have analyzed the admissibility of "consciousness of guilt" evidence under the framework provided by Fed. R. Evid. 404(b). See 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.08[4], at 401-59 to 401-62 (2d ed. 2006) (collecting cases). Other circuits have concluded that resistance to arrest is *res gestae* evidence that does not technically fall under Fed. R. Evid. 404(b) because "'it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" Wright, 392 F.3d at 1276 (quoting United States v. McLean, 138 F.3d 1398, 1403 (11th Cir.1998)).

Nevertheless, the balancing test under Fed. R. Evid. 403 still applies. See id. Under either Fed. R. Evid. 403 or 404(b), the Court must consider whether the Government has

established each link in the following chain of inferences: "(1) from [the defendant's] behavior to the resistance; (2) from the resistance to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the firearm possession; and (4) from consciousness of guilt concerning the firearm possession to actual guilt for that crime." Id. at 1278. In this case, such a chain of inferences is complicated to some degree because, in addition to his consciousness of his guilt with respect to the firearm charge, Defendant's behavior also may evince his consciousness of guilt regarding the robbery charge or a probation/parole violation.[1]

The Eleventh Circuit faced a similar predicament in Wright, 392 F.3d at 1278-79, where the individual who resisted arrest was facing several potential charges, only some of which were before the jury at his trial. Nevertheless, the Eleventh Circuit concluded that it was within the jury's province to decide whether consciousness of guilt sprung from the crimes charged in that case or from other, uncharged crimes. See id. Other courts including the Tenth Circuit have similarly concluded that the Government's evidence of consciousness of guilt need not exclude all other potential inferences that could be drawn from a defendant's behavior in order to be admissible or probative under Fed. R. Evid. 403. See United States v. Akers, 215 F.3d 1089, 1103 (10th Cir. 2000); 2 Jack B. Weinstein & Margaret A. Berger, supra, § 401.08[4], at 401-59 (collecting cases). Thus, in this case, Defendant's proffer of other potential explanations for his behavior, e.g., that he was asleep

---

[1]Defendant is not charged in this case with a probation/parole violation, and no motions are pending with respect to the proposed testimony of his probation/parole officer or the GPS evidence.

or did not recognize the officer's initial commands were directed at him, does nothing to render the Government's evidence of his resistance inadmissible for the limited purpose of showing consciousness of guilt.

That said, it is still important to limit the evidence concerning the circumstances of Defendant's arrest in order to mitigate any unfair prejudice that might otherwise arise. At the Call of the Calendar, the Court offered the parties the opportunity to craft a proposed limiting instruction explaining the purpose for which this line of evidence is being offered, as well as the jury's authority to accept or reject it for that purpose. See 2 Jack B. Weinstein & Margaret A. Berger, supra, § 401.08[4], at 401-59 (explaining how a limiting instruction can form part of a court's analysis under Fed. R. Evid. 404(b)); Akers, 215 F.3d at 1103 (noting district court's limiting instruction in analyzing flight evidence under Fed. R. Evid. 403). The Court will offer such a limiting instruction at trial.

In addition, the scope of the Government's evidence concerning the alleged standoff must be limited so that it focuses upon Defendant's behavior and those actions which were communicated to or from the occupants of the residence, rather than internal police communications during the standoff. After all, the relevant point to be gleaned from this line of evidence is not whether the officers at the scene felt threatened by Defendant's behavior, called in a SWAT team based on that threat, communicated with each other about forming a tactical plan for entering the residence, or had special weapons and tactical devices at their disposal in the event that a forced entry became necessary. Thus, there is no need to mention the word "SWAT" or get into the details of what a SWAT team consists of, especially given

that the alleged standoff never reached the point where the SWAT team had to deploy and forcibly extract Defendant from the residence.

Rather, the relevant points to be covered for purposes of showing consciousness of guilt are simply (1) that the officers made their presence known and repeatedly used a loudspeaker and/or other means to put the occupants of the residence on notice that the police were outside the home seeking to arrest Defendant or execute a search warrant, and (2) how Defendant and the other occupants responded to that notice (*e.g.*, delaying for 90 minutes, walking around the house, looking out the window, etc.). In addition, Defendant will be afforded the opportunity to rebut the inference of consciousness of guilt by presenting evidence as to his version of events and the reasons for the occupants' alleged delay in exiting the residence.

The Court also will not permit the Government's witnesses to rely on hearsay or circumvent the requirements of the Confrontation Clause as articulated in Crawford v. Washington, 541 U.S. 36 (2004). In this regard, the statement the officers attributed to Defendant's nephew to the effect that Defendant would not exit the residence peacefully would appear to be hearsay if it is introduced through an officer's testimony rather than that of the declarant. At the time they took the nephew's statement, it appears that the officers were already conducting an investigation of their own making and not merely responding to a 911 call or some other ongoing emergency created by the occupants of the residence. Thus, the nephew's statement to police could be considered "testimonial" under Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006).

-13-

At the Call of the Calendar, the Government claimed that the statement attributed to Defendant's nephew is not being introduced to establish the truth of the matter asserted but only to show its effect on the listener, *i.e.*, causing the police to believe that Defendant posed a threat of resistance and causing them to respond by calling in the SWAT team. But again, it is not particularly relevant that the officers felt threatened or called in the SWAT team. The focus of the "consciousness of guilt" evidence is on *Defendant's* state of mind and whether *Defendant* was on notice that the officers wanted to arrest him or search his residence, not whether the *officers* felt threatened or were on notice of something Defendant said. To the extent that the Government seeks to elicit testimony that the nephew's statement caused the officers to undertake additional efforts in order to gain access to Defendant and his residence, the Government's witnesses may refer to the fact that they talked to the nephew without disclosing the content of his statement.

With these limitations in place, the Court concludes that the probative value of the evidence supporting an inference of Defendant's consciousness of guilt is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or other considerations under Fed. R. Evid. 403. The Court's ruling on the admissibility of "consciousness of guilt" evidence is, however, subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. Thus, counsel must advise both the Court and opposing counsel if and when he is ready to introduce this topic to the jury so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide a timely limiting instruction.

-14-

**D.     Defendant's Second Motion in Limine and Withdrawal of Same**

On June 11, 2007, Defendant filed a *Second Motion in Limine* [Doc. 69] challenging the admissibility of his post-arrest statements under Fed. R. Evid. 403. Defendant later filed a motion to withdraw his second motion in limine [Doc. 91], which the Court discussed with counsel at the suppression hearing on August 3, 2007. [Doc. 95.] As stated in the *Memorandum Opinion and Order Denying Defendant's Motion to Suppress* [Doc. 97], neither Defendant's motion to suppress nor his second motion in limine sought the suppression of any post-arrest statements based on the requirements of Miranda v. Arizona, 384 U.S. 436 (1966), or the Due Process Clause. Nevertheless, the Court will provide a stock or pattern jury instruction addressing the parameters for determining the voluntariness of Defendant's post-arrest statements. With that understanding, the Court now grants Defendant's motion to withdraw his second motion in limine, and the latter motion is deemed withdrawn.

**III.     CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the United States' motion in limine, grants in part and denies in part Defendant's first motion in limine, grants Defendant's motion to withdraw his second motion in limine, and denies Defendant's discovery motions under the conditions set forth above.

**IT IS, THEREFORE, ORDERED** that the *United States' Motion in Limine* [Doc. 40] is **GRANTED IN PART** with respect to excluding reference to potential sentencing consequences at trial and **DENIED IN PART** with respect to Defendant's notice of alibi.

**IT IS FURTHER ORDERED** that Defendant's *Motion for Early Jencks Act Disclosure of Witness Statements and Investigative Notes* [Doc. 50] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant's *Motion to Compel Production of Officers' Rough Investigative Notes* [Doc. 73] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant's *First Motion in Limine* [Doc. 59] is **GRANTED IN PART** and **DENIED IN PART** under the conditions stated above.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Withdraw Mr. Barros' Second Motion in Limine* [Doc. 91] is **GRANTED** and Defendant's *Second Motion in Limine* [Doc. 69] is hereby deemed **WITHDRAWN**.

**SO ORDERED** this 10th day of August, 2007, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge